Justice STEVENS,
dissenting.
I differ with the majority’s conclusion that the use of handcuffs transformed Appellant’s interaction with parole agents at his pre-arranged meeting into the functional equivalent of an arrest for Miranda[1] purposes, and thus, I respectfully dissent.
Preliminarily, as the majority acknowledges, the United States Supreme Court has addressed the issue of Fifth Amendment application to probationers in Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). As part of his probation, Murphy was required to, inter alia, participate in a sex offender treatment program, report to his probation officer as required, and honestly answer questions posed to him by his probation officer. Id., at 422, 104 S.Ct. 1136. At some point, the probation officer was advised that during a counseling treatment session, Murphy admitted to committing a previous rape and murder. Id., at 423, 104 S.Ct. *138 1136. With the intent of questioning Murphy about the previous incident, and knowing she would report Murphy’s incriminating statements to the police, the probation officer set up a meeting with Murphy. Id. The probation officer opened the meeting by informing Murphy she had received information from the counselor regarding Murphy’s admission to the prior crimes, and in response, Murphy admitted to her that he had committed the rape and murder. Id., at 423-24, 104 S.Ct. 1136. The probation officer told Murphy she had a duty to report the information to the authorities, and Murphy was later arrested and charged with first degree murder. Id., at 424-25, 104 S.Ct. 1136.
In analyzing whether, in the absence of Miranda warnings, Murphy’s statements to the probation officer were admissible in a subsequent criminal proceeding, the Supreme Court relevantly concluded Murphy was not “in custody” for Miranda purposes. Id., at 430, 104 S.Ct. 1136.
In so holding, the Supreme Court went to great lengths to discuss why Murphy (a probationer who attended a prearranged meeting with his probation officer) was not in custody. Specifically, the Supreme Court emphasized that:
Not only is custodial interrogation ordinarily conducted by officers who are ‘acutely aware of the potentially incriminatory nature of the disclosures sought,’ ... but also the custodial setting is thought to contain ‘inherently compelling pressures which work to undermine the individual’s will to resist and to compel him to speak where he would not otherwise do so freely.’ To dissipate ‘the overbearing compulsion ... caused by isolation of a suspect in police custody,’ the Miranda Court required the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it. We have consistently held, however, that this extraordinary safeguard ‘does not apply outside the context of the inher *139 ently coercive custodial interrogations for which it was designed.’
[[Image here]]
Even a cursory comparison of custodial interrogation and probation interviews reveals the inaptness of the Minnesota Supreme Court’s analogy to Miranda. Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers’ will and to confess. It is unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to a similar impression. Moreover, custodial arrest thrusts an individual into ‘an unfamiliar atmosphere’ or ‘an interrogation environment ... created for no purpose other than to subjugate the individual to the will of his examiner.’ Many of the psychological ploys discussed in Miranda capitalize on the suspect’s unfamiliarity with the officers and the environment.
Murphy, 465 U.S. at 429-433, 104 S.Ct. 1136 (quotations and citations omitted).
Thus, the Supreme Court pointed to the following factors in rejecting the claim Murphy was in custody: (1) Murphy’s regular meetings with his probation officer should have served to familiarize him with her and her office and to insulate him from psychological intimidation that might overbear his desire to claim the privilege; (2) the coercion inherent in custodial interrogation deriving in large part from an interrogator’s insinuations that the interrogation will continue until a confession is obtained was lacking; and (3) Murphy was not physically restrained and could have left the office such that any compulsion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator. Id., at 433, 104 S.Ct. 1136.
In distinguishing Murphy from the instant case, and thus concluding Appellant was in custody when he was handcuffed at the parole office, the majority concludes “no mere parole *140 interview took place here.” Majority Opinion at 134, 118 A.3d at 379. To support this conclusion, the majority points to the fact Appellant was “accused of crimes for which he was not on parole; there was no ‘interview’ or dialogue related to the conditions of his parole or parole violations.” Id. However, my review of Murphy reveals substantially similar questioning occurred in that case, and thus the instant case is not violative of the Fifth Amendment on this basis.
Additionally, the majority points to the fact Appellant was handcuffed at the parole office. Majority Opinion at 134-35, 118 A.3d at 378-79. However, I respectfully disagree with the majority that the parole agent’s use of handcuffs removed the instant parole interview out of the realm of Murphy and transformed it into the functional equivalent of an arrest for which Miranda safeguards were warranted. This Court has held that the use of handcuffs on an individual is not disposi-tive of whether the individual is in custody, and as indicated supra, in Murphy the absence of handcuffs was just one factor considered by the Supreme Court. Commonwealth v. Carter, 537 Pa. 233, 247 n. 2, 643 A.2d 61, 68 n. 2 (1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
In the instant case, Appellant voluntarily arrived for a prearranged meeting at the parole office, where had had been on many occasions. He met with the parole agent, who had been supervising Appellant for approximately eighteen months. The supervision of Appellant during this time period included, inter alia, urine screens, office visits, and searches of Appellant’s approved residence. Appellant had been on parole for this period without incident and had recently returned from an out-of-state travel pass. Upon arriving at the parole office, the agent handcuffed Appellant, told him he had received information Appellant was in possession of firearms, and informed Appellant his approved residence would be searched. When asked if firearms would be found in his home, Appellant admitted there was a gun in a drawer under the living-room couch.
Based on the totality of the circumstances, I find Appellant was not in custody at the parole office. Similar to the *141 defendant in Murphy, Appellant was not in an unfamiliar atmosphere, he was not in isolation, and he was familiar with the parole agent. While Appellant was handcuffed for the parole agent’s safety, there is no indication the parole agent insinuated the interrogation would continue until Appellant confessed and there was no aggressive, confrontational show of force. Simply put, the use of handcuffs does not, in my mind, tip the scale in this case from a non-custodial parole interview to the functional equivalent of an arrest.[2] Therefore, I respectfully dissent.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. As it relates to Appellant's remaining statements, which he made at his approved residence and prior to the search of his vehicle, I would find any error with regard to the admission thereof to be harmless. Commonwealth v. Wright, 599 Pa. 270, 961 A.2d 119 (2008).